IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

MARSHA EVANS, individually, as
Administratrix of the ESTATE OF
TYLER EVANS, and as the Natural
Parent and Next Friend of MICAH
EVANS,

     Plaintiff,

v.                              Civil Action No. 2:06-0995

CHRISTIAN JAVIER SANCHEZ
RUBIO a/k/a Jose C. Madrigal, an
incarcerated individual; MARVIN
NAVARRO; TONEY'S AUTO
SALES, a Kentucky entity; and
MINSERCO, INC., a Delaware
Corporation,

     Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

Pending before the court are defendant Minserco, Inc.'s

Motion to Dismiss (Doc. No. 5) and defendant Tony's Auto Sales'

Motion to Dismiss Or, In The Alternative, For A More Definite

Statement (Doc. No. 11).  Having reviewed the record and

applicable law and for the reasons outlined below, the

court **GRANTS** defendant Minserco, Inc.'s motion (Doc. No. 5) and

**DENIES** defendant Tony's Auto Sales' motion (Doc. No. 11).  The

Clerk is directed to remove defendant Minserco, Inc., from this

action.

## I.  Factual Allegations

According to the complaint, Terry Evans, his four-year old son Tyler, and his one-year old son Micah, were traveling in a car on Route 3, near Whitesville, West Virginia, around midnight on August 30, 2006.  (Doc. No. 1-1, Complaint ¶ 11.)  Defendant Sanchez Rubio, who was allegedly engaged in a drag race with defendant Navarro, approached the Evans vehicle at a curve in the road while driving at a high speed, in the wrong lane of traffic. (Id. at ¶ 13-14.)  Although Terry Evans tried to avoid defendant Sanchez Rubio's car, defendant struck his vehicle head on.  (Id. at ¶ 16.)  Tyler Evans died as a result of the injuries sustained in the crash.  (Id. at  ¶ 18.)  Micah Evans suffered significant trauma and required surgery.  (Id. at ¶ 19.)  His injuries may have "lasting physical effect."  (Id.)  After the accident, it was revealed that defendant Sanchez Rubio had a blood alcohol content of .166, more than twice the legal limit.  (Id. at ¶ 21.) In addition, he does not have a valid driver's license.  (Id. at ¶¶ 25, 33.)

On November 3, 2006, plaintiff filed this action in the Circuit Court of Boone County, West Virginia.  (Id. at ¶¶ 1-50.) According to the complaint, defendant Sanchez Rubio is an illegal immigrant who was employed by Minserco, Inc. ("Minserco"), at the time of the accident, to provide "labor and service for coal

mining operations in Boone County." (Id. at ¶ 22.)  The vehicle driven by defendant Sanchez Rubio was registered in the name of and owned by Tony's Auto Sales of Mt. Sterling, Kentucky.  (Id. at ¶ 23.)

Count III of the complaint charges defendant Tony's Auto Sales with negligent entrustment, alleging that it breached its duty to confirm that defendant Sanchez Rubio was competent and fit to drive a motor vehicle before entrusting him with the vehicle involved in the crash.  (Id. at ¶ 42-45.)  Count IV of the complaint charges defendant Minserco with negligent hiring, alleging that it breached its duty to conduct a reasonable investigation into defendant Sanchez Rubio's background, which would have revealed his illegal alien status, his false driver's license, his unsafe driving habits, as well as his excessive use of alcohol, all of which posed an unacceptable risk to third parties, including plaintiff.  (Id. at ¶ 46-50.)

On November 21, 2006, defendant Minserco removed the case to this court pursuant to 28 U.S.C. §§ 1332 and 1441.  (Doc. No. 1-1, Notice of Removal.)  On November 29, 2006, defendant Minserco moved to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim.  (Doc. No. 5.)  Plaintiff filed a response, (Doc. No. 9), to which defendant Minserco filed a reply (Doc. No. 15).  On December 15, 2006, defendant Tony's Auto Sales also filed a motion to dismiss.

(Doc. No. 11.)  Plaintiff filed a response, (Doc. No. 17), to

which defendant Tony's Auto Sales filed a reply (Doc. No. 20).

These motions are now ripe for adjudication.

## II.  Standard of Review

A motion to dismiss for failure to state a claim should not

be granted unless "it appears beyond doubt that the plaintiff can

prove no set of facts in support of his claim which would entitle

him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  In

assessing a motion to dismiss for failure to state a claim, the

court must accept all well-pled allegations set forth in the

complaint as true and must construe the facts and reasonable

inferences derived therefrom in the light most favorable to the

plaintiff.  Ibarra v. United States, 120 F.3d 472, 473 (4th Cir.

1997).  "The court need not, however, accept unsupported legal

conclusions, legal conclusions couched as factual allegations, or

conclusory factual allegations devoid of any reference to actual

events." Morgan v. Graco Children's Prods., Inc., 184 F. Supp.

2d 464, 465-66 (D. Md. 2002) (citations omitted).

## III.  Analysis

### A.  Defendant Minserco

Defendant Minserco alleges that plaintiff's complaint should

be dismissed for failure to state a claim because plaintiff has

not alleged an actionable breach of duty.  (Doc. No. 6 at 5.)

Page 4 of  15

Defendant Minserco states that there is no "general duty on all employers to snoop and intrude on employees' personal and private lives." (Id.)  In response, plaintiff argues that the complaint sets out a prima facie case for negligent hiring and that defendant confuses the elements of negligent hiring with those of vicarious liability and respondeat superior.  (Doc. No. 9 at 4-5.)

The West Virginia Supreme Court of Appeals has recognized a cause of action based upon a claim of negligent hiring. McCormick v. W. Va. Dep't of Pub. Safety, 503 S.E.2d 502, 506 (W. Va. 1998) (per curiam).  The test it applies to determine whether an employer should be held liable for negligent hiring is as follows:

> [W]hen the employee was hired or retained, did the employer conduct a reasonable investigation into the employee's background *vis a vis the job* for which the employee was hired and the possible risk of harm or injury to co-workers or third parties that could result from the conduct of an unfit employee? Should the employer have reasonably foreseen the risk caused by hiring or retaining an unfit person?

Id.  (quoting State ex rel. W. Va. State Police v. Taylor, 499 S.E.2d 283, 289 n.7 (W. Va. 1997)) (emphasis added).  A claim for negligent hiring differs from claims based upon vicarious liability or respondeat superior, because there is no requirement that the employee's tortious conduct be within the scope of his or her employment in order for the employer to be held liable.

<u>Di Cosala v. Kay</u>, 450 A.2d 508, 515 (N.J. 1982) (cited with approval in <u>Taylor</u>, 499 S.E.2d at 289 n.7); Louis Buddy Yosha & Lance D. Cline, <u>Negligent Hiring and Retention of an Employer</u>, 29 Am. Jurisprudence Trials 267, § 4 (2006).

Although the employee's tortious conduct need not be within the scope of his or her employment, there must be at least some connection between the injured plaintiff and the employment in order for the employer to owe a duty to the plaintiff.  <u>See e.g.</u>, <u>Stalbosky v. Belew</u>, 205 F.3d 890, 896-97 (6th Cir. 2000) (finding that even if employer knew of employee's criminal history, employer was not guilty of negligent hiring under Kentucky law[1] when employee raped and killed a hitchhiker while on the job, because employee's "position as a long-haul truck driver did not grant him supervisory power over or special access" to members of

---

[1] Kentucky bases its cause of action for negligent hiring on Restatement (Second) of Agency § 213 (1958).  <u>Oakley v. Flor-Shin</u>, 964 S.W.2d 438, 442 (Ky. Ct. App. 1998).  In <u>Di Cosala</u>, 450 A.2d at 514, a case referred to by the West Virginia Supreme Court of Appeals as "a leading negligent hiring case," the court also bases its analysis of the negligent hiring claim before it on § 213.  <u>Taylor</u>, 499 S.E.2d at 289 n.7.  The Restatement defines the cause of action as such:

> A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless:
> . . .
> (b) in the employment of improper persons or instrumentalities in work involving risk of harm to others.

Restatement (Second) of Agency § 213 (1958).

the general public); McCormick, 503 S.E.2d at 507 ("[T]he employer's duty with respect to hiring or retaining an employee increas[es], as the risks to third persons *associated with a particular job* increase.") (emphasis added); Di Cosala, 450 A.2d at 514; see also Yosha & Cline, supra, at § 2 ("In each case that has found an employer liable for damages under the negligent hiring or negligent retention theory, there has been a close connection or relationship between the plaintiff and the defendant employer's business."); John C. North, Note, The Responsibility of Employers for the Actions of their Employees: The Negligent Hiring Theory of Liability, 53 Chi.-Kent L. Rev. 717, 724 (1977) (inferring from a survey of negligent hiring cases that the negligent hiring theory "may be applicable whenever the employee meets the plaintiff as a direct result of the employment"). A connection between the plaintiff and the employment is required because the duty the employer owes to members of the public stems from the benefits the employer receives from having customers. Yosha & Cline, supra, at § 3.

Plaintiff's claim against defendant Minserco must be dismissed, because the complaint contains no factual basis for finding that defendant Minserco owed this plaintiff a duty of reasonable care in hiring defendant Sanchez Rubio. Plaintiff argues that defendant Minserco should have known that defendant Sanchez Rubio would have to drive to his job and therefore had a

duty to investigate whether he had a valid driver's license. (Doc. No. 9 at 9.)   However, while an employer owes a duty to the public to investigate the driving record of employees hired as drivers, it owes no such duty when employees are hired to perform other duties.  See Raleigh v. Performance Plumbing & Heating, 130 P.3d 1011, 1018-19 (Colo. 2006)(en banc) (holding that while employer had a duty to use reasonable care in hiring safe drivers when driving was involved in performance of job duties, employer owed no duty to plaintiff injured by employee in a car accident that occurred while the employee was driving home from work, because driving home was not one of his job duties). Here, plaintiff has not alleged either that driving was one of defendant Sanchez Rubio's job responsibilities, nor that the accident occurred while defendant Sanchez Rubio was performing one of his job responsibilities.  (See Doc. No. 1-1, Complaint.)

Plaintiff similarly argues that defendant Minserco breached a duty owed to plaintiff when it failed to properly investigate whether defendant was a legal resident of the United States or whether he had a drinking problem.  (Doc. No. 9 at 9-10.) Plaintiff infers that if defendant Minserco had discovered defendant Sanchez Rubio's immigration status, it would never have hired him, and he would not have been driving on Route 3 on August 30, 2006, the night of the accident.  (Id.)  Again, the court finds that under these facts, defendant Minserco owed no

duty to this particular plaintiff to investigate defendant Sanchez Rubio's immigration status or drinking habits, because defendant Sanchez Rubio did not come into contact with the plaintiff as a result of his employment.  <u>See</u> <u>Raleigh</u>, 130 P.3d at 1018-19 (noting that "the duty of reasonable care in hiring the employee appropriately focuses on the job duties for which the employee is hired in relation to persons the employer would reasonably foresee the employee coming into contact with through the employment"); <u>Di Cosala</u>, 450 A.2d at 518.  The link between the plaintiff and Sanchez Rubio's employment is simply too tenuous.  Accordingly, the court must dismiss plaintiff's negligent hiring claim against defendant Minserco.

### B. Defendant Tony's Auto Sales

Defendant Tony's Auto Sales argues that plaintiff's claim must be dismissed because, under Kentucky law, it was not the owner of the car at the time of the accident, although it retained the certificate of title.  (Doc. No. 12 at 5-6) (citing Ky. Rev. Stat. Ann. §§ 186A.220 & 186A.010(7)(c).  Plaintiff argues that West Virginia law offers no such obstacle.  (Doc. No. 17 at 5) (citing W. Va. Code § 17A-4-9).  Accordingly, plaintiff asserts that West Virginia law governs its negligent entrustment claim, including the determination of whether defendant Tony's Auto Sales owned or was in control of the vehicle at the time of the accident.  (<u>Id.</u> at 4.)  Plaintiff further asserts that under

West Virginia law, the complaint adequately pleads a claim for negligent entrustment. (<u>Id.</u> at 2.)

In diversity cases, a federal court must apply the choice-of-law rules of the state in which it sits. <u>Klaxon v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487, 496-97 (1941).  Therefore, West Virginia's choice of law rules apply.  West Virginia courts apply the traditional choice-of-law rule, *lex loci delicti*, in tort cases. <u>Vest v. St. Albans Psychiatric Hosp., Inc.</u>, 387 S.E.2d 282, 283 (W. Va. 1989).  Under that rule, "the substantive rights between the parties are determined by the law of the place of injury." <u>Id.</u> (citing <u>Paul v. Nat'l Life</u>, 352 S.E.2d 550 (W. Va. 1986)).  In this case, the place of injury is West Virginia.

Defendant Tony's Auto Sales' argument that Kentucky law should be applied is based on its assertion that the question of ownership must be resolved by looking to the sales contract executed between it and defendant Sanchez Rubio, as well as the Kentucky laws that govern that contract.  (<u>See</u> Doc. No. 12 at 5.) Under West Virginia law, the law of the state in which a contract is made and performed governs the construction of a contract when it is involved in litigation in the courts of West Virginia. (<u>Id.</u>) (citing <u>Nadler v. Liberty Mut. Fire Ins. Co.</u>, 424 S.E.2d 256 (W. Va. 1992)).  However, this case does not involve a dispute over the terms of the sales contract.  Therefore, Kentucky law concerning the ownership of a motor vehicle should

not be applied.  Instead, the court must apply West Virginia law
to all elements of plaintiff's negligent entrustment claim
against defendant Tony's Auto Sales, including the issue of
ownership.[2]  See Hanley v. Forester, 903 F.2d 1030 (5th Cir.
1990) (applying Mississippi's modified lex loci delicti doctrine
in a negligent entrustment case and rejecting defendant's claim
that "it makes little sense for an owner to have to follow
another state's ownership laws depending on what state he happens
to be driving through").  Thus, the court must reject defendant
Tony's Auto Sales' argument that the complaint should be
dismissed because, under Kentucky law, it did not own the car at
the time of the accident.[3]

   Defendant Tony's Auto Sales further argues that the
complaint should be dismissed even if it is the owner of the car,
because car dealerships have no duty to confirm a purchaser's

_____

   [2]  The  result would be different if West Virginia applied
the more modern choice-of-law rules adopted by some
jurisdictions.  See e.g., Wallman v. Riverside Auto Sales, Inc.,
909 F.2d 183, 185-86 (6th Cir. 1990); Graham v. Malone Freight
Lines, Inc., 948 F. Supp. 1124, 1131 (D. Mass. 1996).

   [3]Defendant Tony's Auto Sales argues that its motion to
dismiss should be granted even under West Virginia ownership law
because the West Virginia Supreme Court of Appeals has held that
a "certificate of title [to an automobile] is not conclusive
proof of ownership but is merely evidence in establishing title
which may be rebutted by other evidence."  (Doc. No. 20 at 2)
(citing Syl. Pt. 2, Keyes v. Keyes, 392 S.E.2d 693 (W. Va. 1990).
Based solely on the allegations in the complaint, the court
cannot determine at this time whether, under West Virginia law,
defendant Tony's Auto Sales "owned" the car in question at the
time of the accident.

identity or his right to drive a car.  (Doc. No. 12 at 8.)  Under
West Virginia law, the tort of negligent entrustment has been
defined as follows:

> An owner who entrusts his motor vehicle to a
> person whom he knows, or from the
> circumstances is charged with knowing, to be
> incompetent or unfit to drive it is liable for
> injury inflicted which results from the use of
> the automobile by the driver if the injury was
> proximately caused by the disqualification,
> incompetency, inexperience, intoxication or
> recklessness of the driver.

Clark v. Shores, 499 S.E.2d 858, 860 (W. Va. 1997)(per curiam)
(citation omitted).

While the court could find no West Virginia case that
addresses this precise issue, at least one other state court has
found that a car dealership may have a duty to not sell a car to
an incompetent driver when the dealership knows or should know
that the driver is incompetent.  See Johnson v. Casetta, 17 Cal.
Rptr. 81 (Cal. Ct. App. 1961) (holding that liability could be
imposed upon dealership for selling car to an inexperienced and
incompetent driver, provided the dealership had actual knowledge
of his incompetency or knowledge of facts from which they should
have known such); see also Schneider v. Midtown Motor Co., 854
P.2d 1322, 1326-27 (Colo. Ct. App. 1992) (finding that a tacit
agreement to commit negligent entrustment of a car could be
inferred from the circumstances of defendant car dealer's

repeated sale of cars to an unlicensed purchaser known to be an irresponsible driver); Pugmire Lincoln Mercury, Inc., v. Sorrells, 236 S.E.2d 113 (Ga. Ct. App. 1977).  Here, plaintiff asserts that defendant Tony's Auto Sales knew or should have known that defendant Sanchez Rubio was an incompetent driver. (Doc. No. 1-1, Complaint ¶ 43.)  The harm that could result from selling a car to an incompetent driver is certainly forseeable. Thus, the court finds that the complaint is legally sufficient and adequately sets forth the elements of the tort of negligent entrustment, including duty, as well as a factual basis for the claim.

Lastly, defendant Tony's Auto Sales argues that the complaint is ambiguous and, if dismissal is not granted by the court, it is entitled to a more definite statement.  (Doc. No. 12 at 9.)  Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint include only "a short and plain statement of the claim showing that the pleader is entitled to relief."  As the Supreme Court has noted, such a statement should "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 512 (2002) (quoting Conley, 355 U.S. at 47). "If a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under Rule 12(e) before responding."  Id. at

514.  "A motion for a more definite statement is ordinarily restricted to situations where a pleading suffers from unintelligibility rather than want of detail." Gleichauf v. Ginsberg, 859 F. Supp. 229, 233 (S.D. W. Va. 1994) (quoting United States v. Bd. of Harbor Comm'rs, 73 F.R.D. 460 (D. Del. 1977)).

The court finds that the complaint gives defendant Tony's Auto Sales fair notice of plaintiff's claim and the grounds upon which it rests. See Swierkiewicz, 534 U.S. at 514. The complaint sets forth plaintiff's claim of negligent entrustment against defendant, outlining the duty plaintiff alleges that defendant owed, as well as breach, causation, and damages. The complaint also briefly summarizes the events surrounding the accident and the alleged negligent entrustment of the vehicle by defendant Tony's Autos Sales to defendant Sanchez Rubio.

## IV.  Conclusion

For the reasons outlined above, defendant Minserco, Inc.'s motion (Doc. No. 5) is **GRANTED** and defendant Tony's Auto Sales' motion (Doc. No. 11) is **DENIED**. The Clerk is directed to remove defendant Minserco, Inc., from this action.

The Clerk is further directed to send a copy of this Memorandum Opinion and Order to all counsel of record.

It is SO ORDERED this 6th day of March, 2007.

ENTER:

David A. Faber
Chief Judge